THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| IN RE: AMAZON PRIME VIDEO LITIGATION, | Master File No. 2:22-cv-00401-RSM |
| This Document Relates To: All Actions | **CONSOLIDATED CLASS ACTION COMPLAINT** |

Plaintiff Mary Baron ("Baron"), Plaintiff Amanda Caudel ("Caudel"), Plaintiff Allison Carranza-Cordero ("Carranza-Cordero"), Plaintiff Cathy Diomartich ("Diomartich"), Plaintiff Calhea Johnson ("Johnson"), Plaintiff Malika McLean ("McLean"), Plaintiff Shaney Scott ("Scott," and together with Carranza-Cordero, Caudel and Diomartich, the "California Plaintiffs") and Plaintiff Tony Walton ("Walton," and together with Baron, Johnson and McLean, the "New York Plaintiffs") (collectively "Plaintiffs"), by their attorneys allege upon information and belief, except for allegations pertaining specifically to Plaintiffs, which are based on personal knowledge:

## I. INTRODUCTION

1. Amazon.com, Inc. ("Defendant" or "Amazon") is the largest American online retailer with total consolidated net sales revenue of $469,822 billion U.S. dollars for the year ended December 31, 2021.

2. Among its myriad services, Amazon provides consumers the option to "Buy" movies ("Movie Content"), television or cable shows ("Show Content"), and music ("Music Content," together with Movie Content and Show Content, "Digital Content") for a fee via its

CONSOLIDATED CLASS ACTION COMPLAINT - 1
Master File No. 2:22-cv-00401-RSM

1   website, www.amazon.com, and its "Prime Video app" (together with its website, the "Amazon

2   Platform").  Some Movie Content is also available for "Rent."

3       3.      Consumers can purchase the Digital Content by clicking on a "Buy" button.  Once

4   bought, the Movie Content and Show Content is housed in a folder called "Video Purchases &

5   Rentals" (the "Purchased Folder").  Purchased Music Content is housed in a folder called "Music

6   Library."

7       4.      Except for content owned outright by it, Digital Content sold by Defendant is

8   actually licensed to Amazon by the Digital Content's owner.  These licensing arrangements

9   mean that, unlike in a true sale, Defendant can never pass title of any licensed Digital Content it

10  claims to be selling consumers.  Thus, when a licensing agreement terminates for whatever

11  reason, Defendant is required to pull the Digital Content from the consumers' Purchased Folder

12  and Music Library, which it does without prior warning, and without providing any type of

13  refund or remuneration to consumers.  In addition, after pulling Digital Content from the

14  folders they reside in, Defendant does not provide any type of notice to consumers that it has

15  done so.

16      5.      In other words, unlike a Best Buy or Target store that obtains title from a Digital

17  Content's owner that it then conveys to a purchaser for value, Defendant's licensing

18  arrangements prevent it from ever being able to pass title to Digital Content it claims it "sells"

19  to consumers.  Moreover, Defendant's sale of Digital Content, which it does not actually own, is

20  made more egregious because, as demonstrated below, Amazon charges just as much for that

21  content, at times even more so, than stores that actually transfer title of the Digital Content to

22  its customers, which access can never be revoked.

23      6.      Accordingly, Defendant has been, and continues to, mislead consumers into

24  believing it is selling them Digital Content, even though it is merely providing them with a

25  license to view it, which can be terminated at any time, for any reason and without any type of

26  warning so that a consumer can take steps to attempt to preserve it.

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

7.      Defendant likely misrepresents the true nature of its Digital Content transactions as a "sale" for one reason: if it called the transaction what it really is, some type of sublicensing arrangement, it could not charge nearly as much as it charges for the Digital Content by misrepresenting to consumers that it is a true sale.  Thus, it is no wonder that Defendant's product and digital media sales for the year ended December 31, 2021 were over $200 billion U.S. dollars.

8.      Defendant's material misrepresentations relating to its "sale" of Digital Content has caused Plaintiffs and members of the Classes (as defined below) to sustain damages by overpayment for Digital Content they can never own because Defendant does not have the right to transfer title to it in the first place.

## II.    JURISDICTION AND VENUE

9.      Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

10.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]"

11.     The aggregate amount in controversy is at least $5,000,000.

12.     Minimal diversity is met because Plaintiffs are citizens of New York and California, and Defendant is a citizen of Washington.

13.     Venue is proper because many members of the Classes, reside in this District, and because Defendant is not only headquartered in this District and State but also does business therein.

14.     A substantial part of events and omissions giving rise to the claims occurred in this District.

15.     This court has personal jurisdiction over Defendant because it conducts and transacts business, contracts to supply, and supplies goods within Washington.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

### III.     CLASS ACTION ALLEGATIONS

16.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

17.     The proposed classes are defined as follows:

a.     All persons who purchased Digital Content from Defendant within the State of California during the applicable statute of limitations and through class certification and trial (the "California Class");

b.     All persons who purchased Digital Content from Defendant within the State of New York during the applicable statute of limitations and through class certification and trial (the "New York Class"); and

c.     All persons nationwide who purchased Digital Content from Defendant during the applicable statute of limitations and through class certification and trial (the "Nationwide Class," together with the California Class and New York Class, the "Classes").

18.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

19.     Excluded from the Classes are: governmental entities; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and, any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

20.     The members of the Classes are so numerous that joinder is impractical.  Each Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Defendant's records.

CONSOLIDATED CLASS ACTION COMPLAINT - 4
Master File No. 2:22-cv-00401-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    21.    Plaintiffs' claims are typical of the claims of the Classes in that they, like all

2    members of the Classes, overpaid for the Digital Content.

3    22.    Plaintiffs, like all members of the Classes, have been damaged by Defendant's

4    misconduct in that they overpaid for Digital Content.  Furthermore, the factual basis of

5    Defendant's misconduct is common to all members of the Classes, and represents a common

6    thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

7    23.    There are numerous questions of law and fact common to the Classes and those

8    common questions predominate over any questions affecting only individual members of the

9    Classes.

10    24.    Among the questions of law and fact common to the Classes are whether

11    Defendant:

12

13        a.    Deceived consumers by misrepresenting that it was selling them Digital

14            Content when, in fact, it was really only licensing it to them;

15        b.    Overcharged consumers for Digital Content it purported to sell them

16            when, in fact, it was really only licensing it to them;

17        b.    Breached the covenant of good faith and fair dealing by overcharging

18            consumers for Digital Content it purported to sell them when, in fact, it

19            was really only licensing it to them;

20        c.    Violated California, New York, and Washington consumer protection law;

21            and

22        d.    Whether Plaintiffs and the Classes were damaged by Defendant's

23            conduct and, if so, the proper measure of damages.

24    25.    Plaintiffs are committed to the vigorous prosecution of this action and have

25    retained competent counsel experienced in the prosecution of class actions and, in particular,

26    class actions on behalf of consumers and against large retail institutions like Defendant.

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the

2    interests of the Classes.

3          26.      A class action is superior to other available methods for the fair and efficient

4    adjudication of this controversy.  Since the claim amount of each individual member of the

5    Classes is small relative to the complexity of the litigation, and due to the financial resources of

6    Defendant, members of the Classes cannot afford to seek legal redress individually for the

7    claims alleged herein.  Therefore, absent a class action, the members of the Classes will

8    continue to suffer losses and Defendant's misconduct will proceed without remedy.  Moreover,

9    given that the "sale" of Digital Content was carried out in a uniform manner, common issues

10   predominate over any questions, to the extent there are any, affecting only individual

11   members.

12         27.      Even if the members of the Classes themselves could afford such individual

13   litigation, the court system could not.  Given the complex legal and factual issues involved,

14   individualized litigation would significantly increase the delay and expense to all parties and to

15   the Court.  Individualized litigation would also create the potential for inconsistent or

16   contradictory rulings.  By contrast, a class action presents far fewer management difficulties,

17   allows claims to be heard which might otherwise go unheard because of the relative expense of

18   bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and

19   comprehensive supervision by a single court.

20                                    **IV.    PARTIES**

21         28.      Plaintiff Baron is a citizen of The Bronx, New York in Bronx County.

22         29.      During the relevant statutes of limitations, Plaintiff Baron purchased Show

23   Content for personal consumption and/or use in reliance on the representations that the Show

24   Content was being sold to her, even though Defendant did not have the right to do so because

25   Defendant was only legally able to sublicense it.  Accordingly, Plaintiff Baron suffered an injury

26   because she overpaid for Show Content that Defendant led her to believe she was purchasing

27   even though Defendant could not sell (nor pass title over) it to her.  While Plaintiff Baron's

CONSOLIDATED CLASS ACTION COMPLAINT - 6
Master File No. 2:22-cv-00401-RSM

1   injury occurred at the time of overpayment, it should nevertheless be noted that she did lose

2   Show Content Defendant misrepresented it sold her, including multiple episodes of the

3   television show *Friends* (Bright, Kauffman, Crane Productions and Warner Bros. Television

4   2004-2006).

5       30.     Plaintiff Carranza-Moreno is a citizen of Paso Robles, California in San Luis

6   Obispo County.

7       31.     During the relevant statutes of limitations, Plaintiff Carranza-Moreno purchased

8   Movie Content for personal consumption and/or use in reliance on the representations that the

9   Movie Content was being sold to her, even though Defendant did not have the right to do so

10  because Defendant was only legally able to sublicense it.  Accordingly, Plaintiff Carranza-

11  Moreno suffered an injury because she overpaid for Movie Content that Defendant led her to

12  believe she was purchasing even though Defendant could not sell (nor pass title over) it to her.

13  Moreover, while Plaintiff Carranza-Moreno's injury occurred at the time of overpayment, it

14  should nevertheless be noted that she did lose Movie Content Defendant misrepresented it

15  sold her, including one of the movies in the FIFTY SHADES Trilogy (Perfect World Pictures, Michael

16  De Luca Productions and Trigger Street Productions 2015-2018), and several documentaries

17  including *No Go-Zone The World's Toughest Places* (Maximus Film Network) and *Cartels and*

18  *Police Corruption: Inside Mexico's Drug War* (Ligne de Front 2009).

19      32.     Plaintiff Caudel is a citizen of Fairfield, California in Solano County.

20      33.     During the relevant statutes of limitations, Plaintiff Caudel purchased Movie

21  Content for personal consumption and/or use in reliance on the representations that the Movie

22  Content was being sold to her, even though Defendant did not have the right to do so because

23  Defendant was only legally able to sublicense it.  Accordingly, Plaintiff Caudel suffered an injury

24  because she overpaid for Movie Content that Defendant led her to believe she was purchasing

25  even though Defendant could not sell (nor pass title over) it to her.

26      34.     Plaintiff Diomartich is a citizen of Tustin, California in Orange County.

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1    35.    During the relevant statutes of limitations, Plaintiff Diomartich purchased Movie

2    Content for personal consumption and/or use in reliance on the representations that the Movie

3    Content was being sold to her, even though Defendant did not have the right to do so because

4    Defendant was only legally able to sublicense it.  Accordingly, Plaintiff Diomartich suffered an

5    injury because she overpaid for Movie Content that Defendant led her to believe she was

6    purchasing even though Defendant could not sell (nor pass title over) it to her.  Moreover,

7    while Diomartich's injury occurred at the time of overpayment, it should nevertheless be noted

8    that she did lose Movie Content Defendant misrepresented it sold her, including SON OF THE

9    MASK (Erica Huggins and Scott Kroopf 2005) and WHO FRAMED ROGER RABBIT? (Frank Marshall and

10    Robert Watts 1988).

11        36.    Plaintiff Johnson is a citizen of Endicott, New York in Broome County.

12        37.    During the relevant statutes of limitations, Plaintiff Johnson purchased Movie

13    Content for personal consumption and/or use in reliance on the representations that the Movie

14    Content was being sold to her, even though Defendant did not have the right to do so because

15    Defendant was only legally able to sublicense it.  Accordingly, Plaintiff Johnson suffered an

16    injury because she overpaid for Movie Content that Defendant led her to believe she was

17    purchasing even though Defendant could not sell (nor pass title over) it to her.  Moreover,

18    while Plaintiff Johnson's injury occurred at the time of overpayment, it should nevertheless be

19    noted that she did lose Movie Content Defendant misrepresented it sold her, including THE HATE

20    YOU GIVE (Fox 2000 Pictures, et al. 2018) and THE INEVITABLE DEFEAT OF MISTER AND PETE (Venture

21    Forth 2013).

22        38.    Plaintiff McLean is a citizen of The Bronx, New York in Bronx County.

23        39.    During the relevant statutes of limitations, Plaintiff McLean purchased Movie

24    Content for personal consumption and/or use in reliance on the representations that the Movie

25    Content was being sold to her, even though Defendant did not have the right to do so because

26    Defendant was only legally able to sublicense it.  Accordingly, Plaintiff McLean suffered an

27    injury because she overpaid for Movie Content that Defendant led her to believe she was

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1   purchasing even though Defendant could not sell (nor pass title over) it to her.  Moreover,

2   while Plaintiff McLean's injury occurred at the time of overpayment, it should nevertheless be

3   noted that she did lose Movie Content Defendant misrepresented it sold her, including

4   DISTURBIA (Paramount Pictures 2007) and TRANSFORMERS (DreamWorks Pictures et al. 2007).

5           40.     Plaintiff Scott is a citizen of Rialto, California in San Bernardino County.

6           41.     During the relevant statutes of limitations, Plaintiff Scott purchased Movie

7   Content for personal consumption and/or use in reliance on the representations that the Movie

8   Content was being sold to her, even though Defendant did not have the right to do so because

9   Defendant was only legally able to sublicense it.  Accordingly, Plaintiff Scott suffered an injury

10  because she overpaid for Movie Content that Defendant led her to believe she was purchasing

11  even though Defendant could not sell (nor pass title over) it to her.  Moreover, while Plaintiff

12  Scott's injury occurred at the time of overpayment, it should nevertheless be noted that she did

13  lose Movie Content Defendant misrepresented it sold her, including DON'T BREATHE 2 (Fede

14  Álvarez, Sam Raimi and Robert Tapert 2021) and THE FOREVER PURGE (Jason Blum, Michael Bay,

15  Andrew Form, Brad Fuller, James DeMonaco and Sébastien K. Lemercier 2021).

16          42.     Plaintiff Walton is a citizen of Adams, New York in Jefferson County.

17          43.     During the relevant statutes of limitations, Plaintiff Walton purchased Movie

18  Content and Show Content for personal consumption and/or use in reliance on the

19  representations that said content was being sold to him, even though Defendant did not have

20  the right to do so because Defendant was only legally able to sublicense it.  Accordingly,

21  Plaintiff Walton suffered an injury because he overpaid for Movie Content that Defendant led

22  him to believe he was purchasing even though Defendant could not sell (nor pass title over) it

23  to him.  Moreover, while Walton's injury occurred at the time of overpayment, it should

24  nevertheless be noted that he did lose Movie Content Defendant misrepresented it sold him,

25  including the movies ELF (New Line Cinema 2003) and TRANSFORMERS (DreamWorks Pictures et al.

26  2007).  Plaintiff also lost Show Content Defendant misrepresented it sold him, including *Billions*

27  (Best Available! 2016-present).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

44.    Defendant is a Delaware corporation with its principal place of business in Seattle, Washington, in King County, and is a citizen of Washington State.

## V.    FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

45.    Through the Amazon Platform, consumers can "Buy" or "Rent" Movie Content, and subsequently access it, in a variety of ways via computer, television, Amazon devices, mobile devices, Blu-ray players, games consoles and streaming media devices.  Consumers can also buy Show Content and Music Content.

46.    In the event that a consumer desires to "Rent" Movie Content, Defendant advertises that, for a fee of around $5.99, the consumer will have access to the Movie Content for 30 days and then for 48 hours after the consumer first starts to watch the Movie Content.

47.    For a much higher fee of around $19.99, Defendant offers the option to "Buy" the Movie Content.

48.    Below is a representative example of the options available to a consumer on Defendant's website at the digital point-of-sale of Movie Content:



49.    In the event that a consumer desires to "Buy" Show Content, Defendant will sell it for a fee of around $2.99 per episode.

50.    For a much higher fee of around $19.99, Defendant offers the option to "Buy" an entire season of Show Content.

CONSOLIDATED CLASS ACTION COMPLAINT - 10
Master File No. 2:22-cv-00401-RSM

51.     Below is a representative example of the options available to a consumer on Defendant's website at the digital point-of-sale of Show Content:



52.     When a consumer chooses the option to "Buy" on the page of the Movie Content and Show Content by clicking on the "Buy" button, the Movie Content and Show Content instantly becomes available in the consumer's Purchased Folder without the consumer needing to accept any terms and conditions pursuant to a clickwrap agreement.

53.     Regardless of which device is used to access Movie Content and Show Content, or whether it is purchased via Defendant's website or the Prime Video app, the content is put into a folder called "Video Purchases & Rentals," as shown below.  Purchased Music Content is stored in the "Music Library."



CONSOLIDATED CLASS ACTION COMPLAINT - 11
Master File No. 2:22-cv-00401-RSM

54.     Clicking on the "Video Purchases & Rentals" link will take consumers to their Movie Content and Show Content purchases and rentals.  Clicking on the "Music Library" link will take consumers to their Music Content purchases.

55.     Below is a representative example of the options available to a consumer on Defendant's website at the digital point-of-sale of Music Content:



56.     As called out by the red arrow, consumers can "Buy" one digital song for $1.69. As called out by the green arrow, Defendant states that said song is "Sold by Amazon.com Services LLC" versus some other seller or the content's true owner.

57.     Reasonable consumers will expect that Defendant is using the words "Buy" and "Purchases" throughout the Amazon Platform in the same manner as those words are used, and understood, by the hundreds of millions of people throughout the world that speak English; that is, to "Buy" means to acquire possession over something,[1] and once the "Buy" transaction has been completed, that "something" is then considered to be a "Purchase."[2]

---

[1] Buy Definition, merriam-webster.com/dictionary/buy (last visited Sep. 12, 2022).
[2] Purchase Definition, merriam-webster.com/dictionary/purchase (last visited Sep. 12, 2022). ("to obtain by paying money or its equivalent").

CONSOLIDATED CLASS ACTION COMPLAINT - 12
Master File No. 2:22-cv-00401-RSM

58.     Sold,[3] which is used in the language that appears at the digital point-of-sale of Music Content, is the past tense and past participle of "sell."  Sell is defined as giving up property for money.[4]

59.     Moreover, after a product is the result of a "Purchase," no seller of it should be able to revoke a purchaser's access to it.  In other words, just like Best Buy or Target cannot come into a person's home to repossess a movie or show DVD, or a music CD sold by it, Defendant should not be able to remove Digital Content from its customers' Purchased Folder and Music Library.

60.     Unfortunately for those consumers who chose the "Buy" option, this is deceptive and untrue.  Rather, the ugly truth is that Defendant does not own most of the Digital Content it purports to sell.  In fact, a large portion of the Digital Content Amazon "sells" consumers on a daily basis is actually owned by others who license it to Defendant, thereby making Amazon a sublicensor of Digital Content versus a reseller.

61.     To make matters worse, Defendant charges as much money, even more so at times, for Digital Content it is merely sublicensing versus resellers (like Best Buy and Target) who are actually passing title to such property forever.  In fact, as shown below, Defendant is still "selling" a movie that is two years old, Star Wars: The Rise of Skywalker, for $19.99, while Target is selling that same movie, which a consumer truly owns and can keep forever, for only $10.00.

---

[3] Sold Definition, https://www.merriam-webster.com/dictionary/sold (last visited Sep. 12, 2022).
[4] Sell Definition, https://www.merriam-webster.com/dictionary/sell ("to give up (property) to another for something of value (such as money)" (last visited Sep. 12, 2022).

CONSOLIDATED CLASS ACTION COMPLAINT - 13
Master File No. 2:22-cv-00401-RSM



Star Wars: The Rise of Skywalker on Amazon Platform for $19.99



Star Wars: The Rise of Skywalker Target Price of $10.00

62.     Despite charging a price that is commensurate with a true sale of property, once Defendant's licensing agreement with a content owner terminates, Amazon must revoke the consumers' access and use of the Digital Content.  Amazon has done so on numerous occasions, without notice to consumers before or after the fact, leaving consumers without the ability to enjoy Digital Content they were led to believe they owned.  Incredibly, Amazon has routinely refused to refund consumers any monies paid to "Buy" Digital Content that it had to revoke because Amazon was only allowed to sublicense that content and that licensing agreement had been terminated.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

63.    Defendant's representations are misleading because all of its actions relating to the purported sale of Digital Content give the impression that such content is purchased – *i.e.* the person owns it – when in fact that is not true because Defendant is only allowed to sublicense it.

64.    In so representing the "Purchase" of Digital Content as true ownership of the content, Defendant took advantage of the (1) cognitive shortcuts made at the point-of-sale, *e.g.* the use of the word "Rent" versus "Buy" and (2) price of the Digital Content, which is akin to an outright purchase versus a rental or some other type of licensing or lease arrangement. Defendant's deception is further reinforced by its use of the words "Purchased" and "Sold" on the Amazon Platform.

65.    Though some consumers may get lucky and never lose access to any of their paid-for media, others may one day find that their Digital Content is now gone forever. Regardless, all consumers have overpaid for the Digital Content because they are not in fact owners of it as represented by Defendant, despite having paid the amount of consideration typically tendered to "Buy" the product, because Defendant is only legally allow to sublicense the product.

66.    Defendant's representations that consumers are truly purchasing Digital Content are designed to – and do – deceive, mislead and defraud consumers.  A real-life experience listed on a Reddit post explains the disappearing Digital Content issue:

CONSOLIDATED CLASS ACTION COMPLAINT - 15
Master File No. 2:22-cv-00401-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1



16    67.    The above complaint is not new news for Defendant.  Indeed, Defendant has

17 been aware for close to a decade that consumers are routinely misled by the manner in which it

18 "sells" Digital Content.

19    68.    A Consumer Reports article from October 16, 2012 titled <u>That Amazon Video You</u>

20 <u>Bought? You May Not Actually Be Able To Watch It</u> (*available at*

21 https://www.consumerreports.org/consumerist/that-amazon-video-you-bought-you-may-not-

22 actually-be-able-to-watch-it/) discusses Defendant's unfair ability to pull "Purchased Digital

23 Content" at any time: "This restriction isn't mentioned on the purchase page of the movie, nor

24 is the customer given any such warning during the buying process. It's not even directly

25 mentioned on the "Amazon Instant Video Usage Rules" page."  The article goes on to say that,

26 "We've written Amazon to ask why they do not make this restriction more clear during the

27 purchasing process. If the company replies — we're not holding our breath on this one — we

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  will update." Apparently, Defendant never replied because the article was never updated to
2  reflect that.

3       69.     Defendant has sold more Digital Content, and at substantially higher prices per
4  unit, than it would have in the absence of this misconduct, resulting in additional profits at the
5  expense of deceived consumers.

6       70.     The consumers' belief that they truly own the Digital Content has a material
7  bearing on price, or consumer acceptance of Defendant's Digital Content delivery services,
8  because consumers are willing to pay substantially more for Digital Content that they believe
9  they can access at any time and for an indefinite period.

10       71.     The value of the Digital Content that Plaintiffs and the members of the Classes
11  purchased and consumed was materially less than its value as represented by Defendant.

12       72.     Had Plaintiffs and the members of the Classes known the truth, they would not
13  have bought the Digital Content from Defendant or would have paid substantially less for it.

14       73.     As a result of the false and misleading representations, the Digital Content is sold
15  at a premium price, compared to other similar Digital Content and services represented in a
16  non-misleading way.

17                 **VI.    CLAIMS**
                 **FIRST CLAIM**
18            **California's Consumers Legal Remedies Act**
19  **(By the California Plaintiffs on Behalf of the California Class)**

20       74.     The California Plaintiffs repeat each and every allegation contained in the
21  paragraphs above and incorporate such allegations by reference herein.

22       75.     The California Plaintiffs bring this claim individually and on behalf of the
23  California Class for violation of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750
24  *et seq.* (the "CLRA").

25       76.     Under the CLRA, "services" means "work, labor, and services for other than a
26  commercial or business use, including services furnished in connection with the sale or repair of
27  goods." Cal. Civ. Code § 1761(b).

CONSOLIDATED CLASS ACTION COMPLAINT - 17
Master File No. 2:22-cv-00401-RSM

77.     The component of Amazon Prime Video that enables online playing of "Purchased" Digital Content is a "service" under the CLRA.

78.     Under the CLRA, "consumer" means "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." *Id.* § 1761(d).

79.     The California Plaintiffs and the members of the California Class are "consumers" under the CLRA.

80.     Under the CLRA, "person" means "an individual, partnership, corporation, limited liability company, association, or other group, however organized." *Id.* § 1761(c).

81.     Defendant is a "person" under the CLRA.

82.     Under the CLRA, "transaction" means "an agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement." *Id.* § 1761(e).

83.     Defendant, on the one hand, and the California Plaintiffs and the members of the California Class, on the other hand, engaged in "transactions" under the CLRA because, among other reasons, Defendant agreed to sell, and pursuant to that agreement sold, Movie Content to the California Plaintiffs and the members of the California Class.

84.     Defendant's actions, representations, omissions, and conduct have violated the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods and services to consumers.

85.     Under California Civil Code section 1770(a):

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

*   *   *   *   *

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have.

\* \* \* \* \*

(9) Advertising goods or services with intent not to sell them as advertised . . . .

\* \* \* \* \*

*Id.* § 1770(a).

86.     As detailed above, Defendant has violated California Civil Code section 1770(a)(5) by representing that the Digital Content has characteristics and benefits that they do not have, i.e., Defendant made representations to the California Plaintiffs and the members of the California Class indicating that they could "Buy" Digital Content, and after having paid for them were represented as "Purchases" and, as such, that it would be available for viewing online indefinitely, when in fact Defendant knew that the Movie Content could become unavailable for viewing due to content provider licensing restrictions and because Defendant knew that it could not pass title to the Movie Content.

87.     Defendant violated the CLRA by making the representations and omissions it made at the Digital Content point-of-sale detailed above when it knew, or should have known, that its representations and omissions were false and misleading.

88.     The California Plaintiffs and the members of the California Class believed Defendant's representations that the Digital Content would be viewable online indefinitely.

89.     The California Plaintiffs and the members of the California Class would not have purchased the Digital Content but for the misleading representations and/or omissions by Defendant detailed above.

90.     The California Plaintiffs and the members of the California Class received was worth less than the Digital Content for which they paid.  The California Plaintiffs and the

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1  members of the California Class paid a premium price on account of Defendant's

2  misrepresentations and/or omissions detailed herein.

3      91.    The California Plaintiffs and the members of the California Class were injured in

4  fact and lost money as a result of Defendant's representations and/or omissions about the

5  Digital Content detailed above.  The California Plaintiffs and the members of the California Class

6  paid for Digital Content they thought they were purchasing and, as such, would be available for

7  viewing indefinitely, when in fact Defendant knew that the Digital Content could become

8  unavailable for viewing due to content provider licensing restrictions and because Defendant

9  knew that it could not pass title to the Digital Content.

10     92.    The California Plaintiffs, on behalf of the members of the California Class,

11  request that the Court enjoin Defendant from continuing to employ the unlawful methods,

12  acts, and practices alleged herein pursuant to California Civil Code section 1780(a)(2).  If the

13  Court does not restrain Defendant from engaging in these practices in the future, the California

14  Plaintiffs and the members of the California Class will be harmed in that they will continue to

15  overpay for the purchase of Movie Content that Defendant has no right to sell.

16     93.    Pursuant to California Civil Code § 1780(a)(1), (a)(4) and (a)(5), the California

17  Plaintiffs seek on behalf of themselves and the members of the California Class actual damages,

18  punitive damages, attorneys' fees and costs of litigation, and any other relief the Court deems

19  proper.

20     94.    Pursuant to California Civil Code § 1780(b)(1), the California Plaintiffs seek on

21  behalf of all members of the California Class who are senior citizens or disabled as defined in

22  California Civil Code § 1761(f) and (g), an additional award of up to $5,000 for physical,

23  emotional or economic damage.

24     95.    Therefore, the California Plaintiffs pray for all the relief they and the members of

25  the California Class are entitled to under the CLRA and for injunctive relief consistent with the

26  relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal.

27  2017)) and the Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir. 2019).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**SECOND CLAIM**
**Violation of California's False Advertising Law**
**(By the California Plaintiffs on Behalf of the California Class)**

96.    The California Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

97.    The California Plaintiffs bring this claim on behalf of the California Class for violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* (the "FAL").

98.    At all relevant times, Defendant has engaged in advertising and marketing representing that the Digital Content may be purchased by consumers for viewing online indefinitely.

99.    Defendant engaged in its advertising and marketing with intent to directly induce consumers, including the California Plaintiffs and the members of the California Class, to purchase the Digital Content based on Defendant's false and misleading representations and omissions.

100.    In making and disseminating the representations and omissions detailed herein, Defendant knew or should have known that the representations and omissions were untrue or misleading.

101.    The California Plaintiffs and the members of the California Class believed Defendant's representations that they had purchased the Digital Content and, accordingly, the Digital Content would be available for viewing indefinitely.

102.    The California Plaintiffs and the members of the California Class would not have purchased the Digital Content but for the misleading representations and/or omissions by Defendant detailed above.

103.    The Digital Content the California Plaintiffs and the members of the California Class purchased was worth less than the Digital Content for which they paid.  The California Plaintiffs and the members of the California Class paid a premium price on account of Defendant's misrepresentations and/or omissions detailed herein.

CONSOLIDATED CLASS ACTION COMPLAINT - 21
Master File No. 2:22-cv-00401-RSM

104.    The California Plaintiffs and the members of the California Class were injured in fact and lost money as a result of Defendant's representations and/or omissions about the Movie Content detailed above.  The California Plaintiffs and the members of the California Class paid for Digital Content that could be viewed online indefinitely but did not receive such a product because the Digital Content may become unavailable due to potential content provider licensing restrictions and because Defendant knew that it could not pass title to the Digital Content.

105.    The California Plaintiffs, individually and on behalf of the members of the California Class, request that the Court enjoin Defendant from engaging in the false and misleading advertising and marketing set forth herein.  If the Court does not restrain Defendant from engaging in these practices in the future, the California Plaintiffs and the members of the California Class will be harmed in that they will continue to overpay for the purchase of Digital Content that Defendant has no right to sell.

106.    Therefore, the California Plaintiffs pray only for injunctive and other public relief consistent with the relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) and the Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir. 2019).

### THIRD CLAIM
**Violation of California's Unfair Competition Law**
**Unlawful, Unfair, and Fraudulent Prongs**
**(By the California Plaintiffs on Behalf of the California Class)**

107.    The California Plaintiffs repeat each and every allegation contained in the paragraphs above and incorporate such allegations by reference herein.

108.    The California Plaintiffs bring this claim on behalf of the California Class for violation of the unlawful, unfair, and fraudulent prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.* (the "UCL").

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

109.     The circumstances giving rise to the California Plaintiffs and the members of the California Class's allegations include Defendant's corporate policies regarding the sale and marketing of Digital Content for purchase.

110.     Under the UCL, "unfair competition" means and includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by" the FAL. Cal. Bus. & Prof. Code § 17200.

111.     By engaging in the acts and practices described herein, Defendant has committed one or more acts of "unfair competition" as the UCL defines the term.

112.     Defendant has committed "unlawful" business acts or practices by violating the CLRA and the FAL, as detailed above.

113.     Defendant has committed "unfair" business acts or practices by, among other things:

a.     engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to the California Plaintiffs and the members of the California Class;

b.     engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to the California Plaintiffs and the members of the California Class; and

c.     engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws that this Complaint invokes.

114.     Defendant has committed unlawful, unfair, and/or fraudulent business acts or practices by, among other things, engaging in conduct Defendant knew or should have known was likely to, and did, deceive reasonable consumers, including the California Plaintiffs and the members of the California Class.

115.     As detailed above, Defendant's unlawful, unfair, and/or fraudulent practices include making false and misleading representations and/or omissions.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

116.    As detailed above, Defendant has made material representations that the Digital Content purchased by the California Plaintiffs and the members of the California Class would be available for viewing and/or listening online indefinitely.

117.    Defendant made the representations and omissions with intent to directly induce consumers, including the California Plaintiffs and the members of the California Class, to purchase the Digital Content based on the false and misleading representations and omissions.

118.    The California Plaintiffs and the members of the California Class believed Defendant's representations that the Digital Content would be available for viewing online indefinitely.

119.    The California Plaintiffs and the members of the California Class would not have purchased the Digital Content, but for the misleading representations and/or omissions by Defendant detailed above.

120.    The California Plaintiffs and the members of the California Class received were worth less than the Digital Content for which they paid.  The California Plaintiffs and the members of the California Class paid a premium price on account of Defendant's misrepresentations and/or omissions detailed herein.

121.    The California Plaintiffs and the members of the California Class were injured in fact and lost money as a result of Defendant's violations of the unlawful, unfair, and/or fraudulent prongs of the UCL that are set out above. The California Plaintiffs and the members of the California Class paid for Digital Content that they believed would be available for viewing online, but did not receive such a product because the Digital Content may become unavailable due to potential content provider licensing restrictions, termination of any applicable license agreement and/or because Defendant knew that it could not pass title to the Digital Content.

122.    The California Plaintiffs, on behalf of the members of the California Class, request that the Court enjoin Defendant from engaging in the false and misleading advertising and marketing set forth herein.  If the Court does not restrain Defendant from engaging in these practices in the future, the California Plaintiffs and the members of the California Class

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

will be harmed in that they will continue to overpay for the purchase of Digital Content that Defendant has no right to sell.

123.    Therefore, the California Plaintiffs pray for injunctive relief and other public relief (such as restitution) consistent with the relief that the California Supreme Court discussed in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017) and the Ninth Circuit in *Blair v. Rent-a-Center Inc.*, 928 F.3d 819 (9th Cir. 2019).

**FOURTH CLAIM**
**Violation of NY GBL § 349**
**(By the New York Plaintiffs on Behalf of the New York Class)**

124.    The New York Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

125.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . . ."

126.    Defendant's conduct alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, the New York Plaintiffs and the members of the New York Class seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting Digital Content.

127.    Defendant misleadingly, inaccurately, and deceptively represented that the Digital Content it sold to the New York Plaintiffs and the members of the New York Class had been "Purchased" and, as such, that it would be available for viewing and/or listening indefinitely, when in fact Defendant knew that the Digital Content could become unavailable due to licensing restrictions imposed by content creators and/or owners or other reasons.

128.    Defendant's improper consumer-oriented conduct—including the labeling and advertising of the Digital Content —is misleading in a material way in that it, *inter alia*, induced the New York Plaintiffs and the members of the New York Class to purchase and pay a premium for the Digital Content and to purchase the Digital Content when they otherwise would not

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com

1  have had they known they were merely obtaining a license to said content, which could be

2  terminated at any time for any reason without prior warning.

3      129.    Defendant made the untrue or misleading statements and representations

4  willfully, wantonly, and with reckless disregard for the truth.

5      130.    The New York Plaintiffs and the members of the New York Class have been

6  injured inasmuch as they paid a premium for Digital Content contrary to Defendant's

7  representations.  Accordingly, the New York Plaintiffs and the members of the New York Class

8  received less than what they bargained or paid for.

9      131.    Defendant's advertising and products' packaging and labeling induced the New

10  York Plaintiffs and the members of the New York Class to buy the Digital Content and to pay a

11  premium price for it.

12      132.    Defendant's deceptive and misleading practices constitute a deceptive act and

13  practice in the conduct of business in violation of GBL §349(a) and the New York Plaintiffs and

14  the New York Class have been damaged thereby.

15      133.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, the

16  New York Plaintiffs and the members of the New York Class are entitled to monetary and

17  compensatory damages, restitution and disgorgement of all moneys obtained by means of

18  Defendant's unlawful conduct, as well as interest on those amounts, and attorneys' fees and

19  costs.

20      134.    The New York Plaintiffs and the members of the New York Class seek statutory

21  damages under GBL § 349 of $50 per unit purchased.

22      135.    The New York Plaintiffs, on behalf of the members of the New York Class,

23  request that the Court enjoin Defendant from continuing to employ the unlawful acts and

24  practices alleged herein.  If the Court does not restrain Defendant from engaging in these acts

25  and practices in the future, the New York Plaintiffs and the members of the New York Class will

26  be harmed in that they will continue to believe they are buying Digital Content for viewing

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

and/or listening indefinitely when, in fact, the Digital Content can be made unavailable at any time because it is merely being licensed to them.

### FIFTH CLAIM
### Violation of N.Y. GBL § 350
### (By the New York Plaintiffs on Behalf of the New York Class)

136.    The New York Plaintiffs repeat and reallege each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

137.    N.Y. Gen. Bus. Law § 350 ("GBL § 350") provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

138.    GBL § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . . .

139.    Defendant's labeling and advertisements contain untrue and materially misleading statements concerning its purported sale of Digital Content.

140.    The New York Plaintiffs and the members of the New York Class have been injured inasmuch as they relied upon the labeling, packaging and advertising, and because of that paid a premium for Digital Content.  Accordingly, the New York Plaintiffs and the members of the New York Class received less than what they bargained or paid for.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

141.    Defendant's advertising, packaging and product labeling induced the New York Plaintiffs and the members of the New York Class to buy the Digital Content.

142.    Defendant made the untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

143.    Defendant violated GBL § 350 by representing that the Digital Content it sold to the New York Plaintiffs and the members of the New York Class had been "Purchased" and, as such, that it would be available for viewing and/or listening indefinitely, when in fact Defendant knew that the Digital Content could become unavailable due to licensing restrictions imposed by content creators and/or owners or other reasons.

144.    Defendant's conduct constitutes multiple, separate violations of GBL § 350.

145.    Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Amazon Platform where the Digital Content is purchased and stored.

146.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Digital Content were and continue to be exposed to Defendant's material misrepresentations.

147.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, the New York Plaintiffs and the members of the New York Class are entitled to monetary and compensatory damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, as well as interest on those amounts, and attorneys' fees and costs.

148.    The New York Plaintiffs and the members of the New York Class seek statutory damages under GBL § 350 of $500 per unit purchased.

149.    The New York Plaintiffs, on behalf of the members of the New York Class, request that the Court enjoin Defendant from continuing to employ the unlawful acts and practices alleged herein.  If the Court does not restrain Defendant from engaging in these acts and practices in the future, the New York Plaintiffs and the members of the New York Class will

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

be harmed in that they will continue to believe they are buying Digital Content for viewing

and/or listening indefinitely when, in fact, the Digital Content can be made unavailable at any

time.

### SIXTH CLAIM
**Violation of the Washington Consumer Protection Act**
**(By Plaintiffs on Behalf of the Nationwide Class)**

150.     Plaintiffs repeat and reallege each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

151.     Defendant markets, sells and/or distributes Digital Content.

152.     The conduct described above and throughout this Complaint constitutes unfair

or deceptive acts or practices in violation of §19.86.010 of the Washington Consumer

Protection Act (the "WCPA"), RCW §19.86.010, et seq. 66.

153.     Alternatively, similar statutes, identical in their material respects, are in effect in

many jurisdictions within the United States.

154.     In violation of the WCPA, Defendant omitted and/or concealed facts from

Plaintiffs and members of the Nationwide Class regarding the quality, characteristics, benefits

and/or uses of the Digital Content.

155.     The omissions described herein were likely to deceive consumers into purchasing

the Digital Content.

156.     As a direct and proximate cause of the violations of the WCPA, described above,

Plaintiffs and other members of the Nationwide Class have been injured in that they have

purchased Digital Content for personal, family or household purposes based on nondisclosure

of certain material facts alleged above.

157.     Defendant knew or should have known that Digital Content it purported to sell

was not in fact being sold to consumers because Defendant only had the right to license that

content (versus selling it) to Plaintiffs and other members of the Nationwide Class, and

otherwise was not as warranted and represented by Defendant.

CONSOLIDATED CLASS ACTION COMPLAINT - 29
Master File No. 2:22-cv-00401-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

158.    Defendant deceived and continues to deceive consumers.  This conduct constitutes unfair or deceptive acts or practices within the meaning of the WCPA.  This illegal conduct is continuing with no indication that Defendant will cease and/or has a substantial likelihood of being repeated.  The acts complained of herein were and are capable of deceiving a substantial portion of the public.

159.    Defendant acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when it committed these acts of consumer fraud.

160.    Defendant's unfair and deceptive acts and practices affect the public interest. Further, the unfair and deceptive acts and practices were committed in the general course of Defendant's business and have already injured tens of thousands of individuals nationwide. There is a likelihood Defendant's practices will injure other members of the public.

161.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiffs and other members of the Nationwide Class suffered injury in fact by payment of a purchase price for Digital Content it does not own.

162.    As a result of the acts of consumer fraud described above, Plaintiffs and the Classes have suffered ascertainable loss – actual damages that include the purchase price of the products – for which the Defendant is liable to the Plaintiffs and members of the Nationwide Class for their ascertainable losses, exemplary damages, plus attorneys' fees and costs, along with equitable relief prayed for herein.

**SIXTH CLAIM**
**Unjust Enrichment**
**(By Plaintiffs on Behalf of the Classes)**

163.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

164.    Plaintiffs, on behalf of themselves and the members of the Classes, bring a claim for unjust enrichment.

165.    Defendant's conduct violated, *inter alia*, state and federal law by advertising, marketing, and selling the Digital Content while misrepresenting and omitting material facts.

CONSOLIDATED CLASS ACTION COMPLAINT - 30
Master File No. 2:22-cv-00401-RSM

1   166.    Defendant's unlawful conduct as described in this Complaint allowed Defendant

2   to knowingly realize substantial revenues from selling the Digital Content at the expense of, and

3   to the detriment or impoverishment of, Plaintiffs and the members of the Classes, and to

4   Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of

5   justice, equity and good conscience.

6   167.    Plaintiffs and the members of the Classes conferred significant financial benefits

7   and paid substantial compensation to Defendant for the Digital Content, which was not as

8   Defendant represented it to be.

9   168.    Under common law principles of unjust enrichment, it is inequitable for

10  Defendant to retain the benefits conferred by Plaintiffs' and the members of the Classes'

11  overpayments.

12  169.    Plaintiffs and the members of the Classes seek disgorgement of all profits

13  resulting from such overpayments and establishment of a constructive trust from which

14  Plaintiffs and the members of the Classes may seek restitution.

15  **VII.    PRAYER FOR RELIEF**

16  WHEREFORE, Plaintiffs, individually and on behalf of the members of the Classes,

17  respectfully request the Court to enter an Order:

18  A.    certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2),

19  and (b)(3), as set forth above;

20  B.    declaring that Defendant is financially responsible for notifying the members of

21  the Classes of the pendency of this suit;

22  C.    declaring that Defendant has committed the violations of law alleged herein;

23  D.    providing for any and all injunctive relief the Court deems appropriate;

24  E.    awarding monetary damages, including but not limited to any statutory,

25  compensatory, incidental, or consequential damages in an amount that the Court or jury will

26  determine, in accordance with applicable law;

27

CONSOLIDATED CLASS ACTION COMPLAINT - 31
Master File No. 2:22-cv-00401-RSM

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1        F.     providing for any and all equitable monetary relief the Court deems appropriate;

2        G.    awarding punitive or exemplary damages in accordance with proof and in an

3 amount consistent with applicable precedent;

4        H.    awarding Plaintiffs their reasonable costs and expenses of suit, including

5 attorneys' fees;

6        I.     awarding pre- and post-judgment interest to the extent the law allows; and

7        J.     providing such further relief as this Court may deem just and proper.

8

9     RESPECTFULLY SUBMITTED AND DATED this 12th day of September, 2022.

10                        TERRELL MARSHALL LAW GROUP PLLC

11

12              By: /s/Jennifer Rust Murray, WSBA #36983
                  Beth E. Terrell, WSBA #26759

13                  Email: bterrell@terrellmarshall.com
                  Jennifer Rust Murray, WSBA #36983

14                  Email: jmurray@terrellmarshall.com
                  Adrienne D. McEntee, WSBA #34061

15                  Email: amcentee@terrellmarshall.com
                  936 North 34th Street, Suite 300

16                  Seattle, Washington 98103

17                  Telephone: (206) 816-6603
                  Facsimile: (206) 319-5450

18

19                  Carlos F. Ramirez, *Admitted Pro Hac Vice*
                  Email: cramirez@reesellp.com

20                  Michael Robert Reese, *Admitted Pro hac Vice*
                  Email: mreese@reesellp.com

21                  REESE LLP

22                  100 West 93rd Street, Suite 16th Floor
                  New York, New York 10025

23                  Telephone: (212) 643-0500

24                  Facsimile: (212) 253-4272

25

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

George V. Granade, II, *Admitted Pro Hac Vice*
Email: ggranade@reesellp.com
REESE LLP
8484 Wilshire Blvd., Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Spencer Sheehan, *Pro Hac Vice Pending*
Email: spencer@spencersheehan.com
SHEEHAN & ASSOCIATES, P.C.
505 Northern Blvd, Suite 311
Great Neck, New York 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800

*Attorneys for Plaintiffs*

CONSOLIDATED CLASS ACTION COMPLAINT - 33
Master File No. 2:22-cv-00401-RSM

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com