THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

IN RE: AMAZON PRIME VIDEO LITIGATION,

This Document Relates To: All Actions

Master File No. 2:22-cv-00401-RSM

**NOTICE OF SUPPLEMENTAL AUTHORITY**

Plaintiffs submit as supplemental authority in support of their Response to Amazon.com Inc.'s Motion to Dismiss for Failure to State a Claim, *McTyere v. Apple, Inc.*, 21-CV-1133-LJV (W.D.N.Y. Mar. 21, 2023) (attached as Exhibit A). Local Rules W.D. Wash. LCR 7(n).

RESPECTFULLY SUBMITTED AND DATED this 21st day of March, 2023.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/Beth E. Terrell, WSBA #26759
    Beth E. Terrell, WSBA #26759
    Email: bterrell@terrellmarshall.com
    Jennifer Rust Murray, WSBA #36983
    Email: jmurray@terrellmarshall.com
    Adrienne D. McEntee, WSBA #34061
    Email: amcentee@terrellmarshall.com
    936 North 34th Street, Suite 300
    Seattle, Washington 98103
    Telephone: (206) 816-6603
    Facsimile: (206) 319-5450

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Carlos F. Ramirez, *Admitted Pro Hac Vice*
Email: cramirez@reesellp.com
Michael Robert Reese*, Admitted Pro Hac Vice*
Email: mreese@reesellp.com
REESE LLP
100 West 93rd Street, Suite 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

George V. Granade, II, *Admitted Pro Hac Vice*
Email: ggranade@reesellp.com
REESE LLP
8484 Wilshire Blvd., Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Spencer Sheehan, *Admitted Pro Hac Vice*
Email: spencer@spencersheehan.com
SHEEHAN & ASSOCIATES, P.C.
505 Northern Blvd, Suite 311
Great Neck, New York 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800

*Attorneys for Plaintiffs*

NOTICE OF SUPPLEMENTAL AUTHORITY - 2
Master File No. 2:22-cv-00401-RSM

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TRENISE MCTYERE and LUCILLE
CLARK, *individually and on behalf of all
others similarly situated*,

                Plaintiffs,

      v.

APPLE, INC.,

                Defendant.

_____

                                 21-CV-1133-LJV
                                 DECISION & ORDER

      On October 18, 2021, the plaintiffs, Trenise McTyere and Lucille Clark,

commenced this putative class action against Apple, Inc.  Docket Item 1.  McTyere and

Clark allege that Apple made false representations when it "sold" them digital content on

the iTunes Store only to later remove their access to that same digital content.  *See id.*

at ¶¶ 30, 48.  They assert claims under sections 349 and 350 of the New York General

Business Law, as well as a common law claim for unjust enrichment.  *See id.* at 16-20.

      On January 21, 2022, Apple moved to dismiss the complaint under Federal Rule

of Civil Procedure 12(b)(6).  Docket Item 7.  Apple says that the plaintiffs' General

Business Law claims lack merit because Apple's representations were not misleading

and because the plaintiffs have not adequately alleged that they were injured by any

such misrepresentations.  *See* Docket Item 8.  And Apple says that McTyere's and

Clark's unjust enrichment claim should be dismissed for similar reasons and because it

is duplicative of their General Business Law claims.  *See id.*  On April 22, 2022,

McTyere and Clark responded to the motion to dismiss, Docket Item 26, and on May 27, 2022, Apple replied, Docket Item 29.[1]

For the reasons that follow, Apple's motion to dismiss is granted in part and denied in part.[2]

### FACTUAL BACKGROUND[3]

Apple is "one of the world's largest computer and phone manufacturers and retailers"; it also offers a variety of digital content to consumers on its iTunes Store and

---

[1] More than a month after the plaintiffs' response to the motion to dismiss was due, *see* Docket Item 9, plaintiffs' counsel moved for an extension of time to respond, *see* Docket Item 17. This Court granted that request a few days later. Docket Item 18. In the motion requesting an extension, plaintiffs' counsel asserted that his failure to timely respond to the motion to dismiss was in fact due to Apple's mistake—namely, Apple's supposed failure to properly serve the motion on plaintiffs' counsel, who at that time was not admitted to practice in this Court and could not file electronically. *See* Docket Item 17-1 at 3. But as Apple notes, *see* Docket Item 20 at 3, the Local Rules of Civil Procedure "require[] attorneys to file documents electronically, absent a showing of good cause." *See* W.D.N.Y. Administrative Procedures Guide for Electronic Filing; *see also* Loc. R. Civ. P. 5.1(a) (incorporating the Administrative Procedures Guide). What is more, when Apple moved to dismiss the complaint, two of the plaintiffs' other attorneys—who were admitted to this Court—received electronic notice that Apple had moved to dismiss. *See* Docket Item 7. So it was not Apple's responsibility to mail a copy of the motion to dismiss to the plaintiffs' other attorney, especially when he was not yet admitted in this Court and therefore could not then represent the plaintiffs in this case. Although this Court understands that even the most experienced lawyer can miss a deadline, it expects attorneys to familiarize themselves with the Local Rules and, when appropriate, acknowledge their own errors.

[2] In its motion to dismiss, Apple also argues that the plaintiffs cannot pursue their request for injunctive relief. *See* Docket Item 8 at 29-31. In their response, the plaintiffs withdrew that request. *See* Docket Item 26 at 9 n.3. This Court therefore dismisses the plaintiffs' request for injunctive relief.

[3] The following facts are taken from the complaint, Docket Item 1. On a motion to dismiss under Rule 12(b)(6), the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

"related applications."  Docket Item 1 at ¶¶ 1-2.  For example, consumers can "rent" movies from Apple on the iTunes Store for about $5.99.  *Id.* at ¶¶ 31-32.  If a consumer rents a movie on the iTunes Store, he or she "ha[s] access to the [movie] for 30 days and then for 48 hours after the consumer first starts to watch [it]."[4]  *Id.* at ¶ 32.

Apple also offers consumers the option to purchase movies, television shows, or music.  *See id.* at ¶¶ 33-39.  If a consumer wants to purchase a movie, he or she chooses the "buy" option and pays "a much higher fee" of about $19.99.  *See id.* at ¶ 33.  Consumers also can "buy" a complete television series for about $29.99 or a full musical album for about $11.99.  *See id.* at ¶¶ 36, 39.

"When a consumer chooses the option to 'buy'" digital content on the iTunes Store, the content "instantly becomes available in the consumer's digital content library without the consumer['s] needing to accept any terms and conditions."  *Id.* at ¶ 41. "Regardless of which device is used to access digital content, or which 'iTunes' app is used to buy or rent the digital content, the app provides a tab or folder labeled 'purchased.'"  *Id.* at ¶ 42.  "Clicking on the word 'purchased[]' takes the consumer to the digital content [he or she] owns."  *Id.*  There, the consumer can see the various digital content that he or she has purchased.  *See id.* at 10-11.

After a consumer purchases digital content from the iTunes Store, however, he or she might not have access to it forever.  That is because Apple "does not own all of the digital content it purports to sell"; instead, it licenses some of that content from third parties.  *Id.* at ¶ 46.  And when those third parties terminate their licensing agreements

---

[4] Unless otherwise noted, all capitalization has been removed from the cited source.

with Apple, Apple "must revoke [a] consumer['s] access" to purchased digital content "without warning."  *Id.* at ¶ 48.

Apple "has done so on numerous occasions, including with respect to digital content owned by [McTyere and Clark], leaving [them and other] consumers without the ability to enjoy their already-bought digital content."  *Id.*  McTyere and Clark allege that if they had known about the possibility that Apple might later revoke access to already-purchased content, "they would not have bought [] digital content from [Apple] or would have paid substantially less for it."  *Id.* at ¶ 57.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "[A]lthough 'a court must accept as true all of the allegations contained in a complaint,' that tenet 'is inapplicable to legal conclusions,' and 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

# DISCUSSION

## I.    COLLATERAL ESTOPPEL

As an initial matter, the plaintiffs argue that Apple is collaterally estopped from raising the arguments in its motion to dismiss.  *See* Docket Item 26 at 27-30.  More specifically, the plaintiffs rely on the United States District Court for the Eastern District of California's decision in *Andino v. Apple, Inc.*, 2021 WL 1549667 (E.D. Cal. Apr. 20, 2021) (Mendez, J.), which denied Apple's motion to dismiss California state law claims related to similar alleged iTunes Store misrepresentations.  *See id.* at *4; *see also* Docket Item 26 at 28-30.  And the plaintiffs say that because the *Andino* court decided that the plaintiff's claims were sufficient to withstand a motion to dismiss, nonmutual offensive collateral estoppel should bar dismissal of the plaintiffs' New York State law claims here.  *See* Docket Item 26 at 27-30.

"Nonmutual offensive collateral estoppel, a form of issue preclusion, precludes a defendant from relitigating an issue the defendant has previously litigated and lost to another plaintiff."  *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 79-80 (2d Cir. 2019) (alterations, citation, and internal quotation marks omitted).  Under California law, issue preclusion applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."[5]  *Shamiryan v. Allstate Northbrook Indem. Co.*, 550 F. Supp. 3d 838, 845 (C.D. Cal. 2021).

---

[5] Although the plaintiffs do not specifically point to any source of law in arguing that nonmutual offensive collateral estoppel applies here, "[t]he preclusive effect of a judgment rendered by a federal court sitting in diversity is determined by the law of the state in which the rendering court sat."  *Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 508 n.3 (2d Cir. 2020) (summary order) (citing *Semtek Int'l Inc. v. Lockheed Martin*

The "identical issue" should be construed "broadly enough 'to prevent repetitious litigation of what is essentially the same dispute.'" *Id.* (quoting *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 172 (1984)).  But "issues are not identical if the second action involve[s] application of [a] different legal standard, even though the factual setting of the suits may be the same." *See id.*; *see also Peterson v. Clark Leasing Corp.*, 451 F.2d 1291, 1292 (9th Cir. 1971) (per curiam) (same).

Although the plaintiff's claims in *Andino* and the plaintiffs' claims in this case both relate to Apple's representations on the iTunes Store, the two cases involve claims arising under completely different state laws, and nonmutual offensive collateral estoppel therefore does not apply.  So while the *Andino* court's decision may be informative in evaluating whether the plaintiffs here have stated a claim, it is not the last word.

---

*Corp.*, 531 U.S. 497, 508 (2001)); *see also United Torah Educ. & Scholarship Fund, Inc. v. Solomon Cap. LLC*, 621 F. App'x 64, 65-66 (2d Cir. 2015) (summary order) (evaluating the preclusive effect of Central District of California decision under California state law).  Because both the *Andino* court and this Court have jurisdiction under the Class Action Fairness Act ("CAFA"), *see* Docket Item 1 at ¶ 8; *Andino v. Apple, Inc.*, 2:20-cv-1628, Docket Item 1 at ¶ 27 (E.D. Cal. Aug. 13, 2020), this Court assumes that California law governs the preclusive effect of the *Andino* court's decision.  *See Thornton v. Kroger Co.*, 2022 WL 488932, at *83-84 (D.N.M. Feb. 17, 2022) (evaluating preclusive effect of prior federal class action under New Mexico law); *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 102 (2d Cir. 2015) ("CAFA is, after all, an amendment to the diversity statute.").  In any event, because the issues in *Andino* and this case are not identical, applying federal law would lead to the same result.  *See Smith v. Bayer Corp.*, 564 U.S. 299, 312 (2011) (finding that issue preclusion does not apply under federal law because when "[a] federal court and a state court apply different law," the courts "decide distinct questions").

## II.   NEW YORK GENERAL BUSINESS LAW

Because Apple is not estopped from litigating the issues in this case, the Court addresses the substance of the plaintiffs' claims.  McTyere and Clark allege that Apple's representations about digital content sales on the iTunes Store violate sections 349 and 350 of the New York General Business Law.  Docket Item 1 at ¶¶ 59-84.  "Sections 349 and 350 prohibit respectively 'deceptive acts or practices in the conduct of any business, trade[,] or commerce' and 'false advertising in the conduct of any business, trade[,] or commerce.'"  *Mason v. Reed's, Inc.*, 515 F. Supp. 3d 135, 142-43 (S.D.N.Y. 2021) (alterations omitted) (quoting N.Y. Gen. Bus. Law §§ 349, 350).  To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [the] plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *see also Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1, 774 N.E.2d 1190, 1195 n.1 (2002) ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349.").  "'Deceptive acts' are acts that are 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'"  *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013)).

Apple argues that its statements were not misleading and that, regardless, McTyere and Clark have not alleged that they were injured by those statements.[6]  *See*

---

[6] Apple does not contest that its conduct was consumer oriented, and this Court therefore presumes that this element is satisfied.

Docket Item 8 at 15-27.  Drawing every inference in McTyere's and Clark's favor, as it must at this stage of the case, this Court disagrees.

### A.      Whether Apple's Statements Were Materially Misleading

First, Apple says that telling consumers that they are "buying" digital content is not misleading because, under the plaintiffs' own definition, to "buy" something means to "acquire possession, ownership, *or rights to the use* or services of by payment especially of money."  Docket Item 8 at 17 (emphasis in original) (quoting *Buy*, Merriam-Webster, https://www.merriam-webster.com/dictionary/buy (last updated Mar. 10, 2023)).  Because McTyere and Clark in fact received the "right to the use of" the digital content at issue here, Apple says, its advertising was not misleading regardless of whether their ability to access that digital content later disappeared.  *See id.*

But that "right to use" argument cannot carry the water that Apple asks it to carry. The right to use something may last but a moment or forever.  And by ignoring that issue, Apple's argument begs the question.

Take, for example, two consumers who each pay $19.99 to "buy" two different movies on the iTunes Store, each planning to watch the movie the next night.  The following night, the first streams his movie purchase without a hitch.  But when the second sits down on the couch and opens the iTunes Store, she finds that the movie has disappeared from her "purchased" folder.  As it turns out, Apple lost the rights to that movie minutes before.  Both consumers had the "right to the use of" their movie purchases for the twenty-some hours between the time they purchased them and the time they sat down to watch them.  But the second would-be movie watcher

8

understandably might feel a little miffed if she were told that she received exactly what she paid for.[7]

Or suppose someone whose favorite movie is "A Christmas Story" chooses to buy—not rent—that movie one December because he plans to watch it every holiday season. That Christmas, he watches Ralphie get an official Red Ryder carbine action, two-hundred-shot, range model air rifle. *See generally A Christmas Story* (MGM 1983). But when he tries to watch the movie the very next year, he learns that Apple has lost the rights to it and that it is no longer his to watch. Had he known that would happen, he could have saved a few bucks by having rented it the December before. Oh Fudge!

Drawing every inference in the plaintiffs' favor at this stage, this Court therefore concludes that reasonable consumers might have been misled when they purchased digital content with the mistaken impression that the content could not later be removed from their libraries. *See Fink*, 714 F.3d at 741; *see generally Lisa Coppola, LLC v. Higbee*, 2020 WL 1154749, at *8 (W.D.N.Y. Mar. 10, 2020) ("In most cases, whether a representation would mislead a reasonable consumer is a question of fact."). Because reasonable consumers might have believed that their purchasing digital content from the iTunes Store gave them the ability to use that digital content indefinitely—not merely the right to use it for some limited time—the plaintiffs have sufficiently alleged that the iTunes Store contained statements that were materially misleading.[8] *See Andino*, 2021

---

[7] Moreover, taking Apple's argument at face value, both a consumer who paid $4.99 to rent a movie and a consumer who paid $19.99 to buy it received the "right to the use of" that digital movie.

[8] Apple also contends that consumers were not misled because their purchasing digital content included the right to download that content, *see* Docket Item 8 at 17-18; the plaintiffs dispute that they in fact always could download digital content after

WL 1549667, at *4 ("It seems plausible, at least at the motion to dismiss stage, that reasonable consumers would expect their access couldn't be revoked.").

### B. Whether the Terms and Conditions Alerted Consumers to the Possibility That Their Access Could Be Revoked

Apple also contends that the iTunes Store terms and conditions alerted the plaintiffs (and other consumers) to the possibility that they might lose access to purchased digital content.[9]  *See* Docket Item 8 at 20-23.  And Apple says that because the terms and conditions warned consumers that they should download digital content to prevent that possibility, reasonable consumers would not be misled by Apple's representations.  *See id.*

"[U]nder certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception."  *Fink*, 714 F.3d at 742.  A claim under General Business Law sections 349 or 350 therefore may not be viable "[w]here a defendant fully disclosed the terms and conditions of an alleged deceptive transaction

---

purchasing it, *see* Docket Item 26 at 19.  That sort of factual dispute is not one that this Court can resolve on a motion to dismiss.

[9] Apple attached three iterations of the iTunes Store terms and conditions to its motion to dismiss.  *See* Docket Items 7-1, 7-2, 7-3, 7-4.  The current terms advise consumers that "subsequent to [their] purchase[s], content may be removed from [Apple's] services (for instance, because the provider removed it) and become unavailable for further download or access from Apple."  *See* Docket Item 7-2 at 4; Docket Item 8 at 22.  That sort of disclosure might well bar the plaintiffs' claims here. But the earlier terms and conditions that Apple has submitted, *see* Docket Items 7-3 and 7-4, do not include that same warning.  And because the plaintiffs do not specifically allege when they purchased digital content from the iTunes Store—a point of some contention, *see infra* at 13-15—this Court cannot at this point resolve which set of terms and conditions applied to the digital content purchases at issue here.  Therefore, giving the plaintiffs the benefit of every inference, this Court evaluates their claims in light of the disclosures made by the earlier sets of terms and conditions.

that caused harm to [the] plaintiff." *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *7 (S.D.N.Y. July 9, 2014) (citation and internal quotation marks omitted). So the question here is whether the terms and conditions of an alleged deceptive transaction were fully disclosed to the plaintiffs.

As an initial matter, the parties dispute whether consumers are in fact sufficiently informed of any restrictions in the terms and conditions.[10]  *See, e.g.*, Docket Item 26 at 18 (arguing that "knowledge of the [terms and conditions] cannot be attributed to [the p]laintiffs" because of the terms and conditions' inconspicuous placement (citing *Mantikas v. Kellogg Co.*, 910 F.3d 633, 634 (2d Cir. 2018))).  And that sort of factual dispute is not ordinarily amenable to resolution on a motion to dismiss.  *See, e.g.*, *Ray v. Weit*, 708 F. App'x 719, 722 (2d Cir. 2017) (summary order) ("[A] factual dispute . . . could not have been resolved on a motion to dismiss under Rule 12(b)(6).").  For that reason alone, this Court is not inclined to grant Apple's motion to dismiss based solely on its disclaimer.

---

[10] Apple suggests that the plaintiffs here had knowledge of the terms and conditions because their counsel "requested that the [*Andino* court] take judicial notice of the [terms and conditions]."  Docket Item 29 at 13.  To the extent that Apple argues that the plaintiffs are estopped from contesting the effect of the terms and conditions here because of their attorneys' arguments in a different case, Apple has not sufficiently developed that argument.  *See Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (summary order) (listing factors relevant to judicial estoppel); *see generally United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").  Moreover, while Apple cites *Price v. Apple, Inc.*, 2022 WL 1032472 (N.D. Cal. Apr. 6, 2022), to support its claim that this Court can take judicial notice of the fact that "Apple requires its customers to have an Apple ID account and agree to Apple's terms and conditions," *see* Docket Item 29 at 13, the *Price* court "accept[ed] [that fact] as true" because it apparently was alleged in the complaint, *see Price*, 2022 WL 1032472, at *1.  Apple does not explain how this Court can take judicial notice of factual allegations from a complaint filed in a different case involving different plaintiffs.

In any event, and giving the plaintiffs the benefit of every inference, it is not clear that the iTunes Store terms and conditions sufficiently informed the plaintiffs of the possibility that their purchased digital content could disappear.  For example, the earliest applicable terms and conditions that Apple has submitted warn consumers only that "Apple and its licensors reserve the right to change, suspend, remove, or disable access to any iTunes products, content, or other materials comprising a part of the iTunes service at any time without notice."  Docket Item 7-4 at 10; *see also* Docket Item 7-3 at 12 (terms and conditions informing consumers that "Apple [] reserves the right to modify, suspend, or discontinue the services (or any part or content thereof) at any time with or without notice to you, and Apple will not be liable to you or to any third party should it exercise such rights").  Although that might apprise users about the possibility that digital content might not be available in the iTunes Store indefinitely, this Court cannot—at least at this stage—conclude that it forecloses the plaintiffs' claims.  That is, a reasonable consumer might read those terms and conditions and nevertheless believe that once he or she has "purchased" digital content and that content is saved to his or her "purchased" folder, Apple cannot at that point suspend or terminate access to it, notwithstanding whether it otherwise could do so to other material in the iTunes Store before purchase.

Likewise, Apple says that the plaintiffs were warned to download digital content "to ensure continued access to it"; once consumers download content, Apple says, they can in fact continue to stream that content even if Apple terminates its licensing agreement with another party.  *See* Docket Item 8 at 15-23; *see also* Docket Item 7-3 at 12 (terms and conditions warning users that they are "responsible for backing up [their]

12

own system[s], including any content acquired or rented through the services); Docket Item 7-4 at 6 (terms and conditions informing users that "[a]s an accommodation to you, subsequent to acquiring iTunes eligible content, you may download certain of such previously-acquired iTunes eligible content onto any associated device").  In response, the plaintiffs say that not all content can be downloaded and that the "right to download" does not fully protect against the possibility that a consumer will lose access to digital content.  *See* Docket Item 26 at 19.  Again, that sort of factual dispute is not amenable to resolution on a motion to dismiss, and this Court declines to dismiss the complaint on that basis.  *See, e.g.*, *Andino*, 2021 WL 1549667, at *4 ("Apple also argues that because a user can download purchased content for full and irrevocable access, the 'Buy' and 'Purchased' language is accurate.  But the Court cannot consider such factual contentions at the motion to dismiss stage.").  So at this point, Apple has not shown that its terms and conditions cured its allegedly misleading statements.

### C.   Whether McTyere and Clark Were Injured

Next, Apple contends that McTyere and Clark have not adequately alleged that they were injured by any misrepresentations because they have not offered any specifics about the digital content they purchased.  *See* Docket Item 8 at 23-27.  And Apple argues that the plaintiffs have pleaded only conclusory statements about a price premium injury, not specific allegations to back that up.  *See id.*

"To satisfy the injury element of a claim under [General Business Law sections] 349 or 350, 'a plaintiff must allege that, on account of a materially misleading practice, [he or she] purchased a product and did not receive the full value of [his or her] purchase.'"  *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 280 (S.D.N.Y. 2021)

(quoting *Orlander*, 802 F.3d at 302). "One way to do so is to allege that the plaintiff would not have purchased the product or been willing to pay as much had they known the true facts." *Id.* In other words, "it is sufficient to allege 'that the price of the product was inflated as a result of [the defendant's] deceptions to meet the injury requirement.'" *Id.* (alterations omitted) (quoting *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (summary order)).

Here, McTyere and Clark allege that they purchased digital content from the iTunes Store that later disappeared from their purchased folders. *See* Docket Item 1 at ¶ 48; *see also id.* at ¶ 30. And they allege that they "would not have bought," or "would have paid substantially less for," that digital content had they known about the possibility that they might lose access to it later. *See id.* at ¶ 57.

To be sure, those allegations are thin. McTyere and Clark do not, for example, say what digital content they purchased or when they purchased it. And the paucity of specific information about McTyere's and Clark's purchases might ultimately prove fatal to their claims. But those allegations "are comparable to what numerous other judges in this [circuit] have deemed adequate to survive a motion to dismiss." *See Rivera v. S.C. Johnson & Son, Inc.*, 2021 WL 4392300, at *7 (S.D.N.Y. Sept. 24, 2021) (collecting cases); *see also, e.g.*, *id.* at *1 ("Plaintiffs are each citizens of New York who purchased one of the following cleaning products in that state in 2019 or 2020 . . . ."); *Valcarcel*, 577 F. Supp. 3d at 274-75 (denying motion to dismiss claims under sections 349 and 350 where the plaintiff "allege[d] that she [] purchased [graham] crackers on one or more occasions from a Stop and Shop" but that "[s]he would not have purchased the product if she knew the representations [about whole grain graham flour] were false and

misleading"); *Pichardo v. Only What You Need, Inc.*, 2020 WL 6323775, at *1, *6 (S.D.N.Y. Oct. 27, 2020) (granting motion to dismiss but finding that the plaintiff adequately alleged injury based on allegations that he "purchased [the defendant's beverage] on numerous occasions between January 2018 and the middle of 2020" (internal quotation marks omitted)); *cf. Andino*, 2021 WL 1549667, at *4 (finding allegations that the plaintiff "purchased content from August 13, 2016[,] through class certification and trial" sufficient to satisfy Rule 9(b)).

For those reasons, this Court concludes that the plaintiffs have alleged an injury sufficient to state a claim under the General Business Law.

## III.    UNJUST ENRICHMENT

Finally, Apple argues that the plaintiffs' unjust enrichment claim must be dismissed because it is duplicative of the General Business Law claims and, regardless, because Apple did not make any misrepresentations.  *See* Docket Item 8 at 27-29. "Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (citation and internal quotation marks omitted).  But "unjust enrichment is not a catchall cause of action to be used when others fail."  *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 967 N.E.2d 1177, 1185 (2012).

As the defendants note, "courts in the Second Circuit have consistently held that unjust enrichment claims" should be dismissed when those claims "are duplicative of [General Business Law] claims."  *Barton v. Pret A Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 249 (S.D.N.Y. 2021).  That is, other courts have found that "unjust enrichment

claims should be dismissed where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed." *Grossman v. Simply Nourish Pet Food Co.*, 516 F. Supp. 3d 261, 285 (E.D.N.Y. 2021) (alterations, citation, and internal quotation marks omitted).  But in light of a recent Second Circuit summary order, that principle is not quite as clear as it once was.

In *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170 (E.D.N.Y. 2018), the district court dismissed an unjust enrichment claim because that claim "merely duplicate[d the plaintiff's] other causes of action based on the same alleged misrepresentations." *Id.* at 185.  On appeal, the Second Circuit affirmed the dismissal of the unjust enrichment claim on the grounds that the plaintiff had not alleged "a fraud that would render [the defendant's] enrichment 'unjust.'"  *Axon*, 813 F. App'x at 706.  But the Second Circuit noted that while the unjust enrichment claim failed for that reason, "it is true that a plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim." *Id.*

After that decision, district courts have reached different results when deciding whether an unjust enrichment claim must be dismissed if it appears to be duplicative of other theories of recovery.  *Compare, e.g.*, *Barton*, 535 F. Supp. 3d at 249 (dismissing unjust enrichment claim as duplicative), *with Mason*, 515 F. Supp. 3d at 146-47 (finding that "the plaintiff has pleaded adequately her unjust enrichment claim" after observing that "the Second Circuit recently noted that 'a plaintiff may plead unjust enrichment in the alternative to a breach of warranty claim[]'" (quoting *Axon*, 813 F. App'x at 706)). Here, the plaintiffs allege that Apple made various misrepresentations about the nature

16

of "purchases" on the iTunes Store—allegations that, for the reasons stated above, this Court finds sufficient to survive a motion to dismiss.[11]  And the plaintiffs seek restitution for those purported misrepresentations.  *See* Docket Item 1 at 20.  At this stage of the case, and absent further guidance from the Second Circuit, this Court declines to dismiss the unjust enrichment claim as duplicative of the General Business Law claims. *See Scholder v. Sioux Honey Ass'n Coop.*, 2022 WL 125742, at *6 (E.D.N.Y. Jan. 13, 2022) ("[A]lthough the unjust enrichment claim may ultimately be deemed duplicative of [the] plaintiff's other theories of recovery, at this stage of the proceedings, [the] allegations are sufficient.").

## CONCLUSION

For the reasons stated above, Apple's motion to dismiss, Docket Item 7, is GRANTED in part and DENIED in part.  The plaintiffs' request for injunctive relief is dismissed, but their claims under the New York General Business Law, as well as their unjust enrichment claim, may proceed.  Apple shall answer the complaint within 30 days of the date of this order.


SO ORDERED.

---

[11] For that reason, this Court declines to dismiss the plaintiffs' unjust enrichment claim on the grounds that "the plaintiffs received exactly what they paid for."  Docket Item 8 at 29.

Dated:   March 21, 2023
         Buffalo, New York


                                        /s/ Lawrence J. Vilardo
                                       LAWRENCE J. VILARDO
                                       UNITED STATES DISTRICT JUDGE