UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE: AMAZON PRIME VIDEO LITIGATION, | Master File No. 2:22-cv-00401-RSM |
| | ORDER ON MOTION TO DISMISS |
| This Document Relates To: All Actions | |

## I.  INTRODUCTION

This matter comes before the Court on Defendant Amazon.com, Inc. ("Amazon")'s Motion to Dismiss for Failure to State a Claim, Dkt. #67. Plaintiffs Mary Baron, Amanda Caudel, Allison Carranza-Cordero, Cathy Diomartich, Calhea Johnson, Malika McLean, Shaney Scott, and Tony Walton (collectively "Plaintiffs") oppose the Motion. Dkt. #69. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Amazon's Motion to Dismiss.

## II.  BACKGROUND

Plaintiffs filed their amended Complaint on September 12, 2022. Dkt. #64. Plaintiffs bring this putative class action alleging damages from overpaying for Digital Content due to Amazon's misconduct. *Id*. at ¶ 22. Plaintiffs allege that Amazon overcharged and "[d]eceived consumers by misrepresenting that it was selling them Digital Content when, in fact, it was really

only licensing it to them[.]" *Id*. at ¶ 24. Plaintiffs raise claims under California, New York, and

Washington consumer protection law, including: (1) California's Consumer Legal Remedies Act

("CLRA"); (2) California's False Advertising Law ("FAL"); (3) California's Unfair Competition

Law ("UCL"); (4) New York's General Business Law ("GBL"); and (5) the Washington

Consumer Protection Act ("WCPA"), as well as common law claims for unjust enrichment. *Id*.

at ¶¶ 74-169. Plaintiffs seek monetary damages, including but not limited to statutory,

compensatory, incidental, and consequential damages, injunctive relief, equitable monetary

relief, punitive or exemplary damages, and reasonable attorneys' fees and costs. *Id*. at 31-32.

### A.  Amazon Digital Content

Amazon "is the largest American online retailer" and "provides consumers with the

option to 'Buy' movies . . . television or cable shows . . . and music" via its website or "Prime

Video app." Dkt. #64 at ¶¶ 1-2. Amazon also offers some of its content for "rent." *Id*. at ¶ 2.

Amazon rental fees are approximately $5.99 for movies, but the option to "buy" this content is

for a higher fee of around $19.99 per movie or $2.99 per television episode. *Id*. at ¶¶ 46, 49.

Consumers can purchase this Digital Content by clicking a "Buy" button, then the Digital Content

is stored in a folder titled "Video Purchases & Rentals." *Id*. at ¶ 3.

In reality, according to Amazon's terms, all Digital Content purchases are subject to a

limited licensing agreement. *Id*. at ¶ 4. Amazon cannot pass title of any of this content to

consumers, thus consumers do not own the Digital Content forever. *Id*. If the licensing

agreement for any of the Digital Content is terminated, Amazon has to pull the Digital Content

from not only its site but from all consumers' purchased folders, "which it does without prior

warning, and without providing any type of refund or remuneration to consumers." *Id*. "In other

words, unlike a Best Buy or Target store that obtains title from a Digital Content's owner that it

then conveys to a purchaser for value, [Amazon's] licensing arrangements prevent it from ever being able to pass title to Digital Content it claims it "sells" to consumers. *Id*. at ¶ 5.

### B. Plaintiffs

Plaintiffs are Amazon consumers from New York, California, and Washington. *Id*. at ¶¶ 28-44. Plaintiffs allege that they purchased Digital Content of movies or television shows from Amazon. *Id*. Plaintiffs also allege that they lost access to the Digital Content they purchased. *Id*. at ¶¶ 29, 31, 35, 37, 39, 41, 43. However, all Plaintiffs allege injury at the time of purchase because they would not have "overpaid" for the Digital Content if they had known they were only purchasing a limited license. *Id*. at ¶¶ 28-44.

### III.    DISCUSSION

### A. Legal Standard

#### a. Standing

Pursuant to Article III of the US. Constitution, federal courts have limited jurisdiction to hear only live "cases" and "controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (192); U.S. CONST. art III, § 2. Accordingly, "Article III standing is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011). To satisfy the case-or-controversy requirement, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). When a plaintiff lacks standing, dismissal under Federal Rule of Civil Procedure 12(b)(1) is appropriate. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011); *Walsh v. Microsoft Corp.*, 63 F.Supp. 3d 1312, 1317-18 (W.D. Wash. 2014).

1   A motion to dismiss under Rule 12(b)(1) can attack the factual allegations establishing

2   standing or can attack plaintiff's standing facially. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th

3   Cir. 2014).  "The district court resolves a facial attack as it would a motion to dismiss under

4   12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in

5   the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter

6   to invoke the court's jurisdiction." *Id.* at 1121 (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th

7   Cir. 2013)).  At the pleading stage, a plaintiff need not satisfy *Iqbal/Twombly's*[1] plausibility

8   standard but "must 'clearly . . . allege facts demonstrating' each element" of standing.  *Spokeo,*

9   *Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  As

10  such, the inquiry does not touch directly on the merits of the plaintiff's case.  *See Maya*, 658 F.3d

11  at 1068 (contrasting with consideration of a Rule 12(b)(6) motion which "necessarily assesses

12  the merits of the plaintiff's case").

13        **b. Rule 12(b)(6)**

14        In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as

15  true and makes all inferences in the light most favorable to the non-moving party.  *Baker v.*

16  *Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).

17  However, the court is not required to accept as true a "legal conclusion couched as a factual

18  allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555

19  (2007)).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim

20  to relief that is plausible on its face."  *Id*. at 678.  This requirement is met when the plaintiff

21  "pleads factual content that allows the court to draw the reasonable inference that the defendant

22  is liable for the misconduct alleged."  *Id*.  The complaint need not include detailed allegations,

23

24  [1] *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S.

but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Absent facial plausibility, a plaintiff's claims must be dismissed.  *Id*. at 570.

Where a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

### B.  Analysis

#### a.  Article III Standing

Amazon argues that Plaintiffs lack Article III standing because they fail to allege any actual harm or threat of future injury.  Dkt. #67 at 12.  Amazon contends that Plaintiffs' potential harm is no more than speculative because Plaintiffs have not lost access to their Digital Content. *Id*. at 12-14.  Amazon further argues that Plaintiffs' "overpayment" injury holds no water because it "rests on the same threat of future unavailability" and is "conclusory."  *Id*. at 14-16.

The Court concludes that Plaintiffs have established standing.  Plaintiffs have alleged an injury in fact, *i.e.*, they overpaid for a purchase they otherwise would not have paid for because they did not get the full value of their purchase, owning outright vs purchasing a limited license. Plaintiffs allege this injury was caused by Amazon's misrepresenting how consumers can "buy" Digital Content from Amazon, satisfactorily tracing Plaintiffs' alleged injuries to Amazon. Finally, Plaintiffs' economic injuries are likely to be cured by a favorable outcome in this case. Drawing all reasonable inferences in Plaintiffs' favor and accepting the allegations as true, the Court finds that Plaintiffs have established standing and deny Amazon's dismissal on these grounds.

#### b.  Failure to State a Claim

### i. "Buy" vs "Limited License"

Amazon argues that its use of the word "buy" for Digital Content is not deceptive "because no reasonable consumer would have thought that the Digital Content they purchased was not subject to a license." Dkt. #67 at 22.  Quoting Webster's Dictionary, Amazon asserts that "buy" means "rights to the use or services of payment" rather than perpetual ownership, and its disclosures properly warned Plaintiffs that they may lose access to purchased Digital Content. *Id*. at 21-22.  Plaintiffs disagree, arguing that "the ordinary consumer understands that when they Buy something, they acquire *possession* and *ownership* of it." Dkt. #69 at 17.  Pointing to Amazon's use of the "Buy" button when purchasing tangible goods from Amazon as well, Plaintiffs reason that customers "do not expect Amazon to return to their homes to repossess items after delivery[,]" thus Amazon's argument that a customer should expect this with the purchase of digital content is unreasonable. *Id*. at 16.

In *Andino v. Apple, Inc.*, the U.S. District Court for the Eastern District of California held that "buy" is commonly understood to mean "to acquire possession over something[,]" thus "[i]t seems plausible, at least at the motion to dismiss stage, that reasonable consumers would expect their access [to Digital Content] couldn't be revoked." 2021 WL 1549667, at *4 (E.D. Cal. Apr. 20, 2021) (plaintiff's claims were brought pursuant to California's CLRA, FAL, UCL, and common law unjust enrichment).  Furthermore, in *McTyere v. Apple, Inc.*, the U.S. District Court for the Western District of New York also held that a reasonable consumer could be misled by the word "buy" not meaning ownership or possession but actually meaning "right to the use of" digital content.  663 F. Supp. 3d 247, 254 (W.D.N.Y. 2023) (plaintiffs' claims were brought pursuant to New York's GBL).  "Drawing every inference in the plaintiffs' favor at this stage" on a Motion to Dismiss, the court concluded that plaintiffs sufficiently alleged that use of the word "buy" for digital content was misleading "[b]ecause reasonable consumers might have

believed that their purchasing digital content . . . gave them the ability to use that digital content indefinitely—not merely to use it for some limited time[.]" *Id*. at 255 (citing *Lisa Coppola, LLC v. Higbee*, 2020 WL 1154749, at *8 (W.D.N.Y. Mar. 10, 2020) ("In most cases, whether a representation would mislead a reasonable consumer is a question of fact.")).

Like the courts mentioned above, this Court concludes that Plaintiffs have sufficiently alleged that the word "buy" regarding Digital Content could be materially misleading to the reasonable consumer. Suppose, for example, a consumer "bought" *Barbie* and *Oppenheimer* for $19.99 each from Amazon, anticipating having a "Barbenheimer" weekend event. But after watching *Barbie*, she finds *Oppenheimer* now unavailable because Amazon suddenly lost its license to the film. Not sublime! Understandably, this consumer "might feel a little miffed [or go nuclear] if she were told that she received exactly what she paid for." *McTyere*, 663 F. Supp. 3d at 254. Thus, drawing all inferences in Plaintiffs' favor at this stage, the Court concludes that reasonable consumers might be misled by the term "buy," and Plaintiffs have sufficiently alleged that Amazon's terms were materially misleading.

**ii.  Terms**

Amazon further argues that Plaintiffs agreed to the terms for purchasing Digital Content, thus Plaintiffs contradict their assertion that the terms were deceptive. Dkt. #67 at 17-20. Plaintiffs contend that Amazon's disclosures are hidden within the Terms of Use and are not sufficiently clear to define "buy" for a reasonable consumer. Dkt. #69 at 13-16.

Courts have held that plaintiffs affirmatively consent to all terms when they click a yellow "Buy" or similar button and enter billing information and the full terms of use are available via a hyperlink in close proximity to the "Buy" button. *Viveros v. Audible, Inc.*, 2023 WL 6960281 at *7-8 (W.D. Wn. 2023); *Hall v. Time*, 2020 WL 2303088 at *4 (C.D. Cal. Mar. 13, 2020); *Hall v. Time*, 857 F. App'x 385, 386 (9th Cir. 2021). However, this Court has found that, though

consumers affirmatively consent through the above actions, certain terms and policies could fail to meet statutory standards of clearness and effectiveness. See *Daly, et al. v. Amazon, Inc., et al.*, 2024 WL 775901 at *7 (W.D. Wash. Feb. 26, 2024).

Accordingly, giving Plaintiffs the benefit of every inference at this stage, the Court finds that it is not clear that Amazon's Terms and Conditions sufficiently informed Plaintiffs that their digital content was not, in fact, "bought" in the usual sense of the term but was "limitedly licensed" and subject to cancellation. Plaintiffs have raised a factual dispute regarding this disclosure that the Court declines to determine at this stage in the proceedings.

### iii.   Overpayment

Finally, Amazon argues that Plaintiffs fail to bring an unjust enrichment claim because "they do not allege any facts supporting the allegedly diminished value of the Purchased Digital Content or what they may have overpaid." Dkt. #67 at 24. Furthermore, Amazon reasons that "because there is a contract between Plaintiffs and Amazon, Plaintiffs cannot proceed with any unjust enrichment claim." *Id.*

In similar cases dealing with misrepresentations, courts have upheld claims for unjust enrichment under California and New York law. *See, e.g., Mctyere*, 663 F. Supp. 3d 247 (W.D.N.Y. 2023); *Morrell v. WW International, Inc.*, 555 F. Supp. 3d 173 (S.D.N.Y. 2021); Dutcher v. Google LLC, 2021 WL 628347 (Cal. Super. Jan. 27, 2021). However, Washington law is clear that "[u]njust enrichment is the method of recovery for the value of the benefit *absent any contractual relationship*[.]" *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258, 1262 (2008) (emphasis added); *see Chandler v. Wash. Toll Bridge Auth.*, 17 Wn.2d 591, 604, 137 P.2d 97 (Wash. 1943) ("A party to a valid express contract is bound by the provisions . . . and may not disregard the same and bring an action on an implied contract relating to the same matter[.]"); *see also Pengbao Xia v. Feast Buffet, Inc.*, 387 F. Supp. 3d 1181, 1191 (W.D. Wash.

2019) ("Where a valid contract governs the rights and obligations of the parties, unjust enrichment does not apply.").  As stated above, Plaintiffs affirmatively consented to the contracts with Amazon for the purchases of Digital Content.  The question at large is if the terms of said contracts were ineffectively clear or misleading, not if a contractual relationship exists.

Plaintiffs argue that this Court recognizes a theory of unjust enrichment for overpaying for alleged defective or not-as-advertised products when plaintiffs "allege the defendant effectively tricked them into buying something." Dkt. #69 at 18.  The cases Plaintiffs cite, however, are distinguishable from the instant case.  In *Keithly v. Intelius, Inc.*, this Court allowed an unjust enrichment claim to proceed past the pleading stage when consumers were unknowingly and confusingly roped into a subscription service from a third party when signing up for a different service with a different party.  764 F. Supp. 2d 1257 (W.D. Wash. 2011).  This is different from Plaintiffs' claims alleging that they did knowingly buy the Digital Content from Amazon but did not receive the full benefit of what they paid for.  Plaintiffs also point to *Cousineau v. Microsoft Corp.*, but that case is also distinguishable because there, the plaintiff alleged that her location data was being collected and shared even though she expressly denied her information being transmitted, where as here, Plaintiffs consented to the purchase of Digital Content.  992 F. Supp. 2d 1116 (W.D. Wash. 2012).  Plaintiffs do not allege that they were tricked into purchasing Digital Content but that Amazon was misleading as to what buying the Digital Content actually meant.  The Court concludes that a contractual relationship exists between Plaintiffs and Amazon, thus Plaintiffs unjust enrichment claims under Washington law are dismissed.

## IV.    CONCLUSION

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Defendant Amazon's Motion to Dismiss, Dkt. #67, is GRANTED IN

PART and DENIED IN PART.  Plaintiffs' unjust enrichment claims under Washington law are DISMISSED.  Defendant Amazon's Motion is DENIED as to all other claims.  The parties are to promptly propose a class certification briefing schedule.

DATED this 15th day of March, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION TO DISMISS - 10